†Anson Sammis et al. v. Robert Sly.

1. Election to Proceed in Replevin or for Damages.

When the property of A is levied upon by an officer and held under process against B, A may have an election, either to resort to replevin by which he may claim the property itself in disregard of the levy, or he may regard it as depriving him of his property, as the conversion of it by the officer, for which he may have his suit for damages.

2. Destruction of Property in Negligent Possession of Officer.

The mere fact that an officer, after A's right of action had legally risen, did not appoint a watchman over the property, and did not do such acts as would restrain other creditors of the judgment debtor from taking it, does not have the effect of releasing the right of action already accrued, and the owner, his demand upon the officer for a surrender of the property having been refused, may have his suit for damages in case such property, in the negligent possession of the officer, is destroyed.

Error to the Court of Common Pleas of Huron county.

Bentley, J.

The case of Anson Sammis and others against Robert Sly is an action in error to reverse the judgment of the court of common pleas in favor of Mr. Sly and against the plaintiff in error here, for damages claimed by Mr. Sly on account of the alleged conversion of a stack of rye belonging to him, by the plaintiff in error et al., to their own use.

There are quite a number of specific errors which are alleged and pointed out in the record, but they all depend upon the view which this court may take of the main issue—the principal controversy between the parties, and when we have briefly stated our views in that regard, we will have disposed of the various errors without particular mention of them.

The facts presented are substantially these:

"On September 8, 1891, Mr. Sammis began a suit before the justice of the peace, against one Goodrich on a promissory note that he claimed to have against Mr. Goodrich, and an attachment was then procured in the usual manner, to be issued by the justice in the action, for $300, the plaintiff's claim, and $10 probable costs of the action. The writ of attachment is in the usual form, directing the officer to whom it should be delivered to attach the property of the defendant in this action, Mr. Goodrich."

"This attachment was delivered on September 18, the day of its issue, to one of the plaintiffs in error, Mr. Towne, the constable. He took the writ on that day, about 4 o'clock in the afternoon, and levied it upon various articles of property, as the property of Mr. Goodrich, and among the articles that he levied upon was this stack of rye in question. Mr. Sammis was present on the occasion, and what the constable did was subsequently returned by him on the writ to the justice's court. I will read his return of the writ: "Received this writ Sept. 18, 1891, and by virtue of its order, I went to the place where the defendant's property was found, and there, at the hour of 4 o'clock P. M. of the same day, in the presence and hearing of J. O. Burr and Edward Seeley, did attach four stacks of hay and one stack of rye and about eight acres of beans as the property of Edwin Goodrich, and did then and there attach them, and caused the same to be appraised by the said J. O. Burr and Edward Seeley, (see schedule att.) and I served this writ on the within named Edwin Goodrich by delivering to him a true and certified copy of this writ with the endorsements thereon. I also served the within named S. J. Hawkins by delivering to him a true and certified copy of this writ with endorsements thereon. I also served this writ on the within named William Dart by

---

† This judgment was reversed by the Supreme Court. See opinion 54, O. S., 511.

leaving a true and certified copy of this writ at his usual place of residence, " [Hawkins and Dart being garnishees in attachment.] Signed " S. P. Towne, Constable, " and attached were the exhibits mentioned in the return, showing the levy.

The constable having returned this writ into the justice's court, that proceeding remained pending there for some time.

In the meantime, Mr. Sly claiming to be the owner of this stack of rye, went to Mr. Towne and informed him of that fact and wanted him to give it up, and he refused. Some days afterwards, but without any act upon the part of Mr. Towne, other than leaving the stack of rye as he found it, the stack was destroyed by fire. Thereupon, Mr. Sly began this action against Mr. Sammis, the plaintiff in attachment, and Towne, the constable, for. the value of the stack of rye, claiming that it had been seized and converted to their own use. He obtained a judgment for $120. In the action, the court charged the jury that there was no question presented to them for disposition except as to whether or not the plaintiff was the owner of the rye, and when it was seized, and what its value was at that time.

It is claimed that the various rulings made by the court upon the trial were erroneous because, under the circumstances, the defendants were not liable.

The evidence tended further to show some of the specific acts done by the officer and the plaintiff in the attachment suit when the levy was made. The facts seem to bear out the return of the writ which I have read. That is, whatever act was done, was done in the presence of these two witnesses who were made appraisers and appraised the property. The stack was standing at the time upon land then in the possession of Mr. Goodrich, on his farm. It was property that he had raised. but which sometime before, it was claimed and perhaps not seriously disputed, had been sold to Mr. Sly. The officer went to the stack of rye in company with the plaintiff in attachment, Mr. Sammis, and laid his hand upon the stack and pulled a few straws out of it and declared that he levied upon it as the property of Mr. Goodrich,—he levied the writ that he had then in his hand. This was in the presence of Mr. Sammis, as I have mentioned, and then further proceedings were had as to the appraisement and the officer went away and left it, it being quite a bulky stack of rye. He did not seek after that, to remove it. He did not interfere with it manually at all, after that time. He took no measures to release it and the writ remained on file at the justice's office. Upon application by Mr. Sly for its release, it was refused, as I have before stated. The stack of rye thus stood there with no watcher or custodian appointed by the constable until it was consumed by fire.

Now, the plaintiff claims that gives him a right of action, and constitutes the conversion of this stack of rye, and both the officer and Mr. Sammis claim that it does not.

The main question upon which the great share of the argument was expended was the question of the regularity and sufficiency of this levy, it being claimed that it was no valid levy unless the constable there took the property manually into his possession, or at least, appointed a watchman over it, or somebody to take care of it and keep it in custody for him, —unless a redelivery bond was given.

Quite a number of authorities have been cited in support, as it is claimed, of this contention, but the authorities cited are mainly and almost altogether in cases where there was a contention between the different creditors of the same debtor; cases where the property was said to be levied upon, and other persons were claiming some lien or interest through the debtor at a date subsequent to the levy, or claiming benefit of attachments as creditors of the owner of the property.

I shall not take time to point out specifically the authorities, but a number of authorities were cited in this state to the effect that when the property of A was levied upon by the officer and held under process against B, as the property of B, A may have an election either to resort to replevin or some other appropriate action by which he shall claim the property itself in disregard of the levy; or, on the other hand, to regard it as depriving him of his property, and as the conversion of it by the officer for which he may have his suit for damages.

It seems to us that this record indicates what would have been, but for the protection of this writ, a trespass upon the part of the officer, in going to this place and interfering with the possession of the property—with the claim at the time that he took possession of it —and with the power to enforce the claim—with power to actually take that property into his possession. He regarded himself as in possession of it. He supposed that he had levied upon it. He supposed that he had acquired dominion over it and claiming that he had— still claiming continued dominion, he refused to deliver it when demanded—when he was apprised of the claimed ownership of Mr. Sly. In every thing else but the subsequent holding—the continued actual holding of possession, this levy would seem to be regular and sufficient.

But now, if the acts of the officer at the particular time, amounted to a levy, or amounted, in other words, to an assertion of dominion over the property, when it was in his power, and he actually placed his hand upon it in token of his subjecting it to his authority and possession, then at that time, there arose a cause of action for conversion in favor of the true owner of the property, other than the attachment debtor, which he might have begun ; and, while it may be that the owner may afterwards have been deprived of the benefit of such action on account of some act of his own, such as his assuming possession, or his exercising his option otherwise, yet technically at least, a cause of action arose in his favor.

The mere fact that the officer, after such an action had legally risen did not take the property, did not appoint a watchman over it, and did not do such acts as would restrain other creditors of the judgment debtor from taking it, if it had been the property of the debtor, yet we think those acts of omission would not have the effect of releasing the right of action which had already accrued, and the court of common pleas evidently took this view of it; and it also took upon itself to construe the meaning of this return of the writ itself, and we think that the court of common pleas was justified in holding that the acts done by the officer amounted to a seizure and conversion of the property, if the plaintiff in this case elected to so treat it.

There would be then, left in the case, even under these circumstances, the question whether or not Mr. Sly had elected to treat it as a conversion, or had elected to disregard the levy and to proceed (seeing that there was no actual necessity of the employment of actual force, or breach of the peace apparently) to re-possess himself of it.

That was a question of fact which would arise in the case, and should have been submitted to the jury, and perhaps was. Of course, it stands out as a feature in the case, quite prominently, that this action was not begun until all chance of Mr. Sly's getting this property back had been barred by the fire, and there was testimony to the effect that even after this refusal to give up the property, he had engaged a man to go and thresh it, and that the man thus engaged was only prevented from doing so by the actual destruction of the grain. There was testimony in conflict with this testimony. That was a matter for the jury to determine and which perhaps they did determine, that is, if as a matter of law, those facts would constitute an election any way. It would not be profitable, perhaps, to discuss the matter further as to whether the jury would have been justified in finding that he had made his election even if they believed the testimony that I have recited, or whether there should have been shown some positive act of actually resuming possession, or the taking some action in court or otherwise, by which his intention to avail himself of his option of re-taking the property and disregarding the levy was thoroughly evinced. That question does not necessarily present itself so as to require a direct holding here. The court of common pleas evidently based its ruling upon the idea that there was a conversion and that an action had arisen and that it made no difference even if the officer was somewhat lax afterward in maintaining possession of the property, and in appointing a custodian for it; and, while we have found great interest in hunting up the authorities and in considering them we are clearly of the opinion that the court of common pleas was correct in its judgment, and that the judgment should be affirmed, and it will be so ordered. There will be no penalty other than a judgment against the plaintiff in error for costs.

*S. M. Young*, attorney for plaintiff in error.

*Andrews Bros.*, attorneys for defendant in error.